Maurice L. Rose v. Commissioner. Ella J. Rose v. Commissioner.
Rose v. Commissioner
Docket Nos. 61492, 61493.
United States Tax Court
T.C. Memo 1958-144; 1958 Tax Ct. Memo LEXIS 83; 17 T.C.M. (CCH) 732; T.C.M. (RIA) 58144; July 25, 1958
Cyrus B. King, Esq., Mills Building, San Francisco, Calif., for the petitioners. Edward H. Boyle, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The consolidated proceedings involve the liability of each of the petitioners as transferees for deficiencies in income tax, declared value excess profits tax, and interest, of M. L. Rose Company, a corporation, as follows: Year
Kind of Tax
Deficiency
1944
Income
$ 874.77
Declared value excess profits
403.15
Interest assessed
724.97
1945
Income
1,622.97
Declared value excess profits
970.26
Interest assessed
1,315.55
*84 The questions presented are: (1) Whether the deficiency notices were mailed within the period of limitations governing the assessment of transferee liability, and (2) whether the petitioners, or either of them, are liable as a transferee of assets of M. L. Rose Company, a corporation. Findings of Fact The stipulated facts are found accordingly. The tax liability involved was determined by this Court in a decision entered July 30, 1954, in a proceeding entitled M. L. Rose Company, a corporation, Petitioner, v. Commissioner of Internal Revenue, Docket Nos. 30748 and 34081. No appeal was taken from that decision. The notice of deficiency was mailed to each petitioner on December 21, 1955. The tax liability is not in controversy. M. L. Rose Company, a corporation, hereinafter referred to as the corporation, was incorporated under the laws of the State of California in 1918, and engaged in the real estate business in San Francisco, California. Ella J. Rose, wife of Maurice L. Rose, owned all the stock of the corporation except qualifying shares. Maurice was an officer and director, but he was not a stockholder. The corporation ceased to do business in 1954 and its charter *85 was suspended as of January 3, 1956, by the California Franchise Tax Board. The gross income, the net income before salary paid to Maurice, and the salary paid to him for the years 1946 to 1954, inclusive, were as follows: Salary
Gross
Net Income
Paid to
Year
Income
Before Salary
M. L. Rose
1946
$36,929.42
$26,658.99
$25,000.00
1947
18,773.82
2,251.70
2,500.00
1948
17,185.71
9,487.97
12,000.00
1949
9,152.57
1,474.00
12,000.00
1950
15,672.45
5,252.04
6,750.00
1951
9,584.27
3,868.59
4,000.00
1952
11,187.12
3,629.91
12,000.00
1953
5,449.63
(207.74)
0
1954
5,427.80
79.80
0
The corporation operated at a loss for each of the years 1947 to 1953, inclusive. The corporation filed Federal income tax returns for each of the years 1946 through 1954. The returns for the years 1946 to 1952, inclusive, were audited by the respondent. Maurice received no compensation in the years 1953 and 1954. Maurice as manager was entitled to a commission of 50 per cent of the corporation's income from commissions. On May 28, 1953, Patricia Boscoe, a daughter of the petitioner, and her husband, Edward Boscoe, executed two promissory *86 notes, each in the amount of $12,500 and each payable to the corporation. Both notes were secured by deeds of trust. The makers of the notes were not indebted to the corporation. The transactions were entered into for the purpose of protecting Boscoe from certain alleged contingent claims. In February 1955, the trustee was directed to and reconveyed the property to the trustors. In 1953, in Escrow 416866, of the California Pacific Title Insurance Company, two checks were issued in the respective amounts of $2,391.76 and $117.86 to Maurice. The checks were issued as a result of a refinancing of the property involved in the form of a loan to Patricia and Edward Boscoe from the Bank of America. Maurice was acting as agent for the Boscoes, and endorsed the checks over to them. The corporation served as the real estate broker or agent for Clementine Buckman in the purchase of the Hotel Davenport in 1944. Clementine did not pay the commission. On May 13, 1955, the corporation brought suit to recover the commission and for money advanced to her about October 16, 1951. The suit was brought in the name of Patricia Boscoe, who was a mere nominee of the corporation for the purpose of bringing *87 the suit. On May 13, 1955, in connection with the suit against Clementine Buckman, Patricia had an attachment in the amount of $10,500 placed on the Davenport Hotel. In 1955, Clementine Buckman employed Victor D'Orazi, a real estate broker, to sell the Davenport Hotel. On September 28 and 29, 1955, David Freidenrich, attorney for Maurice, informed D'Orazi that for $1,500 Maurice would instruct the sheriff to release the attachment. D'Orazi instructed the California Pacific Title Insurance Company to pay Maurice and Freidenrich $1,500 out of D'Orazi's commission on the sale of the hotel. On October 7, 1955, the said insurance company paid Maurice and Freidenrich the sum of $1,500, of which amount Freidenrich received the sum of $150. On the same day the attachment was released. At the time of the sale of the Davenport Hotel, the mortgage liens and the Federal and state tax liens were greatly in excess of the sale price. On July 8, 1957, the Superior Court in and for the City and County of San Francisco, awarded judgment to Patricia in her suit against Buckman in the sum of $4,500, plus interest of $2,203. The judgment had not been satisfied at the time of the hearing of this *88 proceeding on October 8, 1957. The respondent has failed to carry the burden of showing that either Maurice or Ella J. Rose was a transferee of the assets or property of the M. L. Rose Company, a corporation. Opinion LEMIRE, Judge: A preliminary issue raised by the respective petitions filed herein is that the transferee liability was not determined within the statutory period of limitations. The petitioners make no argument on brief respecting this issue, but, since it involves the jurisdiction of the Court, the issue will be decided. The record establishes that the tax liability here in question arises from a decision of this Court entered July 30, 1954. No appeal was taken from that decision and it became final on October 30, 1954. The Commissioner had 60 days thereafter or until December 29, 1954, to assess the transferor's tax liability. Section 6503(a)(1) of the 1954 Code. Pursuant to section 6901(c)(1), the Commissioner had an additional year in which to assess petitioners as transferees. The notices of deficiency were mailed December 21, 1955, and were, therefore, timely. The principal question presented is whether the petitioners, or either of them, are liable as *89 transferees. The burden of proof is upon the Commissioner to show that petitioners are liable at law or in equity as transferees of property of the taxpayer. Section 6902(a), 1954 Code. To establish transferee liability, it is incumbent upon the Commissioner to show that the petitioners received a distribution of assets from an insolvent transferor, or that such distribution rendered the transferor insolvent; that the transfer was in fraud of creditors, and the value of the assets received from the transferor. ; . The respondent contends that Maurice received assets of the corporation by reason of certain transactions to the extent of $50,569.92. The respondent argues that Maurice received excessive salary during the years 1946 to 1952, inclusive, in the amount of $15,007.30. The record shows that while Maurice was an officer and director of the corporation, he was never a stockholder. The transferor's returns for the years 1946 to 1952, inclusive, were audited by the Commissioner and no determination was made that the compensation paid to Maurice was unreasonable, nor is there any proof in *90 the present record that the compensation paid was unreasonable. The payment of salaries would not constitute a transfer of assets rendering the payee liable as a transferee in the absence of some showing that it was unreasonable in amount or was in some way improper. ; , affd. . Maurice is not a transferee to the extent of any salary received from the transferor. The respondent further contends that Maurice received a distribution in 1953, represented by two checks in the respective amounts of $2,391.76 and $117.86, in connection with Escrow 416866. The testimony of William H. Smith, a representative of the title company, shows that the payments were the result of a refinancing of the property owned by the Boscoes. Maurice testified that he was acting merely as agent for the Boscoes and that he endorsed the two checks over to them. Hence, the record does not show that Maurice received such amounts as a transferee of the corporation. The respondent also contends that Rose received the sum of $25,000 represented by two promissory notes, each in the amount of $12,500, *91 executed by Patricia and Edward J. Boscoe to the corporation and secured by deeds of trust. Edward J. Boscoe testified that the two notes were executed without any consideration paid to them. Maurice testified that the corporation paid no consideration for the notes, and that the purpose of the transaction was to protect the Boscoes against certain alleged claims of creditors. Upon the subsequent settlement of such claims, the property was reconveyed to the Boscoes. While the transactions might be considered as fraudulent as to alleged creditors of the Boscoes, they were not fraudulent as to creditors of the transferor corporation. The respondent concedes that if the testimony of Boscoe and Maurice is to be accepted as establishing the facts testified to by them, then there was no transfer of assets in the amounts of $25,000 upon which to predicate transferee liability. We accept such testimony as credible in the light of the entire record. The next contention of the respondent is that Maurice received a transfer of the amount of $1,350 for the alleged "lifting" of the attachment placed against the Davenport Hotel in the suit instituted by Patricia Boscoe, on behalf of the transferor *92 corporation, against Clementine Buckman. The sale of the Davenport Hotel in 1955 was made through the real estate brokerage firm of Victor W. D'Orazi. D'Orazi, a witness for the respondent, testified that his firm authorized the title company to pay to Maurice and Freidenrich the sum of $1,500, out of their commission on the sale. The amount of $1,350 was retained by Maurice, and $150 was paid to Freidenrich. Maurice testified that he had assisted D'Orazi in the sale of the Davenport Hotel and that the $1,500 was paid to him as his share of the commission in connection with the sale. He categorically denied that the payment was consideration for the lifting of the attachment. The respondent made no inquiry of D'Orazi as to whether or not the amount was paid as a consideration of the "lifting" of the attachment. In view of the fact that the record shows that the prior liens against Buckman were greatly in excess of the sale price of the Davenport Hotel, the attachment was without value or, at best, of nominal value. We accept the testimony of Maurice that the commission was paid to him for services rendered in connection with the sale of the Davenport Hotel. The payment of $1,350 *93 to Maurice has not been shown to be a transfer of any asset of the transferor corporation. The final contention of the respondent is that the judgment, which was secured on behalf of the corporation against Buckman on July 8, 1957, in the total amount of $6,703, was an asset of the transferor received by the petitioners and that they are liable, as transferees, to that extent. It is to be noted that the respondent makes no argument that any assets of the corporation were distributed to petitioner, Ella J. Rose, the sole stockholder, other than the Buckman judgment. The petitioners contend that the transferor corporation is still the owner of the judgment and that there has been no assignment or transfer of the judgment. We think it is unnecesary to determine whether the transferor was dissolved by operation of law under the statutes of California governing corporations. Assuming, for the purposes of argument without so deciding, that the corporation was dissolved, that it was insolvent, and that the Buckman judgment was assigned and transferred to petitioners, such assumed facts are not sufficient to establish transferee liability of the petitioners. As heretofore pointed *94 out, the respondent has the burden of showing the value of the assets received by the transferees. The respondent argues that it was the duty of petitioners to establish the fair market value of the judgment. We do not agree. The courts will not indulge in any presumption as to the value of property. Where value is an issue, proof of value is required. The respondent has offered no proof of the value of the judgment. The impossibility of proving a material fact, if such impossibility exists, leaves the claimant upon whom the burden rests with an unenforceable claim. . Upon a consideration of the entire record, we hold that the respondent has failed to carry the burden of showing that the petitioners, or either of them, are liable as transferees for the admitted deficiencies of the M. L. Rose Company, a corporation. Decisions will be entered for the petitioners.